WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Lou Finnegan-Crews, | No. CV-18-00172-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Amy Lou Finnegan-Crews, which challenges the Social Security Administration's decision to deny benefits. (Doc. 16). For the following reasons, the Court will affirm the ALJ's decision.

**BACKGROUND**

On January 31, 2014 Plaintiff applied for disability insurance benefits, alleging a disability onset date of November 6, 2013. (Tr. at 10). Plaintiff's claim was denied both initially and upon reconsideration. (Tr. at 80; Tr. at 110). Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (Tr. at 10). The ALJ conducted a hearing on the matter on August 16, 2016, and subsequently issued a decision denying benefits. (*Id.*). Plaintiff then appealed her decision to the Appeals Council, which denied her request for review. (Tr. at 1).

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability. (Tr. at 11–16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date. (Tr. at 13). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of arthritis, obesity, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder. (*Id.*). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. at 14).

At that point, the ALJ determined Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff could perform light work prior to August 25, 2015. (Tr. at 32). The ALJ determined at step four that Plaintiff had no past relevant work. (Tr. at 22). At step five, the ALJ determined that Finnegan-Crews could perform other jobs identified in the vocational expert's responses. (Tr. at 23).

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

### A. ALJ's Evaluation of Dr. Krolik's Opinion

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations and quotation marks omitted). "[T]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (emphasis in original) (internal quotation marks and citations omitted). But if a treating doctor's opinion is contradicted by another nonexamining physician, it may then be rejected for "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ discredited the opinion of Ms. Finnegan-Crews's treating physician, Dr. Krolik, for three reasons. The ALJ found that Dr. Krolik's alleged limitations were inconsistent with her own treatment records, the degree of limitation alleged by Dr. Krolik was inconsistent with the claimant's daily activities, and that Dr. Krolik's assessment was overly sympathetic and not based on the clinical evidence. (Tr. at 21). In her limitation assessment, dated September 12, 2014, Dr. Krolik specifically found that "claimant had extreme limitations in her ability to communicate with coworkers, supervisors" and that "claimant would miss more than 5 days each month." (Tr. at 20).

Here, the ALJ pointed to contemporaneous treatment notes from three separate appointments to support her decision to give Dr. Krolik's assessment less weight. On June 5, 2014, Dr. Jaffee noted that claimant was responding well to medication as it related to flashbacks and nightmares. (Tr. at 387). On September 5, 2014, Dr. Krolik found that Ms. Finnegan-Crew continued to respond well to medication, and she was sleeping well again. (Tr. 384). And on September 26, 2014—just two weeks after Dr. Krolik made her limiting assessment—Dr. Krolik found that claimant was emotionally stable with a normal sleep pattern. (Tr. at 387).

As Ms. Finnegan-Crews notes, subsequent evaluations performed in 2015 and 2016 are more consistent with the limitations alleged by Dr. Krolik. (Doc. 16 at 12). But those subsequent findings are not particularly probative when evaluating Dr. Krolik's 2014 limitation assessment. The fact that treatment notes around the time of the questionnaire are inconsistent with the severe limitations alleged is a "specific and legitimate" reason for discounting Dr. Krolik's testimony. *Lester*, 81 F.3d 821. Thus, the ALJ did not err in discounting her testimony.

### B. Evaluation of Ms. Finnegan-Crew's Symptom Testimony

When a claimant alleges subjective symptoms, like pain, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

At the second step, if the "evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). But the Court "may not affirm [the ALJ's decision] simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). When evaluating symptom testimony, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

### 1. Symptom Testimony Regarding Hip Impairment

In 2006, Ms. Finnegan-Crews was in a motor vehicle accident and suffered a broken right hip. She then underwent hip surgery and placement of hardware. In 2012, the hardware was removed. Due to this impairment, claimant testified that she could "sit for 30 minutes, stand for 15 minutes and not walk very far." (Tr. at 17).

At the first step, the ALJ found that Ms. Finnegan-Crews' underlying impairments could reasonably be expected to produce the symptoms alleged. (Tr. at 17). The ALJ did not find any evidence of malingering. (*Id.*). But the ALJ nonetheless found that "the claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms" were inconsistent with the medical evidence and other evidence in the record. (Tr. at 17). The ALJ gave several reasons for this conclusion.

First, the ALJ noted that the treatment method regarding claimant's hip pain has been conservative and consisted only of medication and injection therapy, as opposed to additional surgeries. "A conservative treatment path is sufficient to discount a claimant's testimony regarding the severity of the impairment." *Parra v. Astrue*, 481 F.3d 742, 750–751 (9th Cir. 2007). The ALJ reasoned that "with claimant's alleged severity of pain and limitations, one would expect more significant findings regarding the diagnostic imaging and exams as well as more complex treatment." (Tr. at 19). Second, the ALJ noted that Ms. Finnegan-Crews' treating physicians did not place any restrictions on her physical movement—which is inconsistent with her claims of totally disabling symptoms. The ALJ similarly noted that while the claimant did allege daily activities that were limited, those activities were not as limited as one would expect from someone with claimant's alleged level of impairment. Finally, the ALJ simply noted that any pain she was experiencing from her hip impairment appeared to be controlled by medication. (Tr. at 18).

The ALJ gave specific, clear and convincing reasons for discounting claimant's testimony as to the debilitating effects of her hip impairment.

///

### 2. Symptom Testimony Due to Mental Illness

Generally, an ALJ may reject a claimant's allegations of debilitating mental symptoms if the evidence demonstrates effective treatment. *Molina*, 674 F.3d at 1113. However, a claimant need not "vegetate in a dark room" in order to be eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). "[C]laimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ discounted Ms. Finnegan-Crews' symptom testimony as to her mental illness for two reasons. First, the ALJ found that there was evidence in the record that demonstrated that she responded well to medical treatment. Second, the ALJ found that the level of impairment alleged was inconsistent with claimant's daily activities.

The ALJ thoroughly explained and cited to evidence in the record to support her conclusion that Ms. Finnegan-Crews responded well to treatment. (Tr. at 18). The ALJ pointed to appointments where claimant reported that she "loved her new medications and she felt much better." (Tr. at 18). The ALJ also pointed to several times in the record where her mental status examination was positive, and claimant had "good hygiene, good eye contact, normal motor activity, appropriate affect, euthymic mood, normal speech and cooperative attitude." (*Id.*). While citing to multiple parts of the record, the ALJ concluded that claimant "consistently noted her medications working and that she was feeling better with them." (*Id.*). This is a legally sufficient reason for discounting claimant's symptom testimony that is supported by substantial evidence in the record. *Molina*, 674 F.3d at 1113. While this evidence may be reasonably be interpreted another way, the ALJ's evaluation should be upheld "[w]here evidence is susceptible to more than one rational interpretation." *Buch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

As for claimant's daily activities, the ALJ acknowledged that they were limited. But the ALJ then concluded that they were not as limited with the alleged level of impairment. This is another valid reason for discrediting claimant's symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958–959 (9th Cir. 2002). The ALJ noted that the

claimant spent time going out with her friends, swimming, and that she had recently attended cosmetology school for six months. Taken together, the ALJ articulated reasons supported by the record, to support its conclusion as to claimant's symptom testimony.

## CONCLUSION

The ALJ made no error of law and there is substantial evidence to support the ALJ's decision.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action and enter judgment accordingly.

Dated this 25th day of March, 2019.

_____
G. Murray Snow
Chief United States District Judge